# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **GERALD RAY LEWIS** | **CIVIL ACTION NO. 5:14-cv-3494** |
|     **LA. DOC #516910** | |
| **VS.** | **SECTION P** |
| | |
| | **JUDGE S. MAURICE HICKS** |
| | |
| **JERRY GOODWIN, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Pro se plaintiff Gerald Ray Lewis, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 19, 2014. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the David Wade Corrections Center (DWCC) and complains that he was denied due process when he was accused of a disciplinary violation and transferred from the Louisiana State Penitentiary (LSP) to DWCC. He also complained that he has been the subject of threats of violence by corrections officers at DWCC; and, that he has been the victim of retaliation by corrections officers at DWCC because of grievances he has filed.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Statement of the Case*

Prior to July 28, 2014. plaintiff was a DOC inmate imprisoned at the LSP. On July 14, 2014, the Main Prison Walnut/Hickory Hobby Shop was closed for a "shake down" or search for

contraband. The search uncovered two cell phones with chargers, some synthetic marijuana, and an undisclosed amount of money.

On July 16, 2014, plaintiff was questioned by investigation service officials. In addition, plaintiff voluntarily submitted to a polygraph examination. According to plaintiff, he heard one of the officials say that he "passed" the test.  On July 18, 2014, plaintiff appeared before the Disciplinary Hearing Board and a full investigation was ordered.

On July 28, 2014, plaintiff was transferred to DWCC without further disciplinary hearings or written notice of transfer.  Plaintiff was also denied the opportunity to meet with the classification committee at LSP.  He did meet with the classification committee at DWCC and they placed plaintiff in Extended Lock Down along with five other inmates who were involved in the Hobby Shop shake down and transferred from LSP to DWCC.

Plaintiff corresponded with "the governing bodies" of DWCC concerning his due process concerns; however, he received no response. On August 17, 2014, plaintiff submitted an Administrative Remedies Procedure grievance (ARP). On November 17, 2014, plaintiff spoke with DWCC's Warden Jerry Goodwin concerning his August 17 ARP.  Goodwin contacted LSP and requested a copy of the investigation report. It was faxed to him and he read it to plaintiff. The Warden then asked plaintiff to drop the ARP but plaintiff refused. The Warden then told plaintiff that the meeting was terminated and denied the existence of a polygraph report in the investigation file.

On December 1, 2014, plaintiff filed an ARP with LSP. On December 13, 2014, at 9:40 p.m., Sgts. Thornton and Freeman restrained plaintiff and his cell mate; according to plaintiff the restraints on his ankles and wrists were too tight. Once the pair were restrained, Thornton and

Freeman conducted a search of the cell.  Plaintiff claims that the officers handled his legal work and letters "in an unprofessional manner." When plaintiff inquired as to the reason for their behavior, Thornton replied "in a harsh tone per order Col. Nail due to ARP and next time you might be taking a trip out into the lobby so stand against the wall and be quiet." (Plaintiff later discovered that the "lobby" is where inmates are taken to be beaten out of sight of electronic surveillance equipment.)

According to plaintiff his wrists and ankles became numb due to the tightness of the restraints. Capt. Heard arrived on the scene and inquired if there were a problem; plaintiff gestured and was told by Heard that "it can get worse." Plaintiff asked the officers to close the window in front of the cell but they ignored his request and he was thus exposed to "extreme cold" throughout the remainder of the night. Further, the heater was turned off until the next shift change.

On December 16, 2014, recreational officer Wallace used profanity towards plaintiff "without reason." When plaintiff was passed over for "yard call" he asked Wallace to explain the oversight and Wallace replied, "that's what we do to inmates who file ARPs." Plaintiff also complained that his written requests for telephone privileges are refused by corrections officers; that the window is left open and the heater turned off thus exposing plaintiff to cold weather. He claimed that his mail is held past the "inspector date."

On December 18, 2014, plaintiff was awakened by Capt. Heard and Sgt. Murphy at 1:30 a.m. He was again placed in restraints and another search of his cell was conducted.  During the course of the search of plaintiff's bunk, Heard was seen "scanning through legal materials and letters..." Heard then again asked plaintiff if he was ready to drop his ARP and when plaintiff did

not respond, Heard remarked, "he must not been introduce to the lobby yet."

On December 30, 2014, plaintiff stopped Col. Nail and asked if they could converse. Once Nail realized plaintiff's identity, and that he had a pending ARP, he refused to continue their conversation. ,According to plaintiff he wanted to advise Nail of threats made by corrections officers.

Plaintiff summarized his claims as follows:

(1) Warden Cain and Major Butler deprived plaintiff of liberty without due process when the transferred plaintiff from LSP to DWCC where he was placed in Disciplinary Extended Lock Down without a hearing;

(2) Warden Goodwin and Col. Nail likewise deprived plaintiff of liberty without due process and thereafter violated plaintiff's First Amendment rights to petition the government for redress of grievances and consequently violated plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment by allowing Capt. Heard, Msgt. Wallace, Sgt. Thornton, Sgt. Murphy and Sgt. Freeman to retaliate against plaintiff for submitting a grievance by damaging plaintiff's property, reading his legal papers, and making threats of bodily harm.

### Law and Analysis

### 1. Screening

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his  complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua*

*sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based

on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon

which relief may be granted when it fails to plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678 (2009).

### 2. Due Process

Plaintiff complains that his due process rights were violated by the defendants who

falsely accused him of a disciplinary rules violation and then ordered him transferred to extended

lock down at DWCC without providing a hearing.  Plaintiff claims that he was denied liberty

without due process, and, based upon the facts alleged, it appears that plaintiff fails to state a

claim for which relief may be granted. By virtue of a valid criminal conviction and subsequent

legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S.

215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  Assuming for the sake of argument that

plaintiff was falsely convicted of the disciplinary rules violation and thereafter sanctioned with a

transfer and then confinement in administrative segregation, his complaint still fails to state a

claim for which relief might be granted pursuant to 42 U.S.C. §1983 because  "[t]he Due Process

Clause does not protect every change in the conditions of confinement having a substantial

adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132

L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.' " *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). Therein the court stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest.' " *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications.").

Thus, assuming for the sake of argument that plaintiff lost privileges or was confined for a period of time in administrative segregation as a result of the defendant's allegedly false

charges, these punishments  are not "atypical" and thus his complaint fails to state a claim for which relief might be granted.

### 3. Transfer

Plaintiff also complains about his transfer from one prison to another. As noted above, plaintiff is an inmate in the custody of the DOC.  Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department..." La. R.S.15:824(A).

Plaintiff is a DOC inmate and therefore his placement is solely within the purview of the DOC. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold  that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334

U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976);  *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984);  *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).  Thus, to the extent that plaintiff contends that his transfer to DWCC was violative of due process, he fails to state a claim for which relief may be granted.

### 4. Threats and Retaliation

Plaintiff also claims that the defendants have retaliated against him for having submitted his grievance.  He claims that on one occasion the defendants fastened restraints too tightly, then left an adjacent window open through the night; and, on another occasion they rifled through his personal papers. However, his main complaint centers around the defendants' threats of bodily harm.

To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means  that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995).  The plaintiff must allege more than just his personal belief that he is the victim of retaliation.  *Johnson v.*

*Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999).

Where a prisoner claims that he has been threatened with retaliation but does not allege the commission of any specific retaliatory acts, such claims are properly dismissed. *Smith v. Hebert*, 533 Fed. Appx. 479 (5th Cir. 2013); *Hudson v. University of Texas Medical Branch*, 441 Fed.Appx. 291, 2011 WL 4361570 (5th Cir., September 20, 2011) (noting that "a prison official's mere use of threatening language, without more, does not constitute a retaliatory adverse act.") This rule of law makes perfect sense because, standing alone, the threatening language and gestures of a custodial officer do not amount to constitutional violations. *Bender v. Brumley*,1 F.3d 271, 274 n.3 (5th Cir.1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983).

Likewise, plaintiff's retaliation claim with regard to the specific incidents complained of, the incidents involving restraints, an open window, and the treatment of plaintiff's papers, fares no better. While the law mandates that prison officials may not retaliate against prisoners for exercising their constitutional rights, Courts must nevertheless take a skeptical view of retaliation claims to avoid meddling in every act of discipline imposed by prison officials. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.2006).  Retaliation against a prisoner is actionable only if it is capable of deterring a prisoner of ordinary firmness from further exercising his constitutional rights. *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir.2008), citing *Morris*, *supra* at 686.  Thus, plaintiff's retaliation complaint fails to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in

accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, February 3, 2015.

_____

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**